UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALLEN HARPER, *et al.*,

Plaintiffs,

-against- 9:21-CV-0019 (LEK/ML)

ANDREW CUOMO, *et al.*,

Defendants.

---

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiffs Allen Harper, José Leon, and Ranfis Perez (collectively, the "Individual Plaintiffs"), on behalf of themselves and others similarly situated, along with the Release Aging People in Prison Campaign ("RAPP"), brought this putative class action under Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), and the Eighth Amendment to the United States Constitution against: New York Governor Andrew Cuomo; the New York State Department of Corrections and Community Supervision ("DOCCS"); DOCCS Acting Commissioner Anthony J. Annucci; DOCCS Chief Medical Officer John Morley; and Adirondack Correctional Facility ("Adirondack C.F.") Superintendent Jeffrey Tedford. Dkt. No. 1 ("Complaint").

Now before the Court is a report-recommendation, Dkt. No. 51 ("Report-Recommendation"), issued by the Honorable Miroslav Lovric, United States Magistrate Judge, recommending denial of Plaintiffs' motion for a preliminary injunction, Dkt. No. 8 ("Motion"). Plaintiffs objected to the Report-Recommendation. Dkt. No. 53 ("Objections"). Defendants filed a response. Dkt. No. 54 ("Response").

For the reasons discussed below, the Court adopts the Report-Recommendation in its entirety.

## II. BACKGROUND

### A. Factual History

"Generally, liberally construed, Plaintiffs' Complaint alleges that Defendants have transferred nearly one hundred elderly and medically vulnerable inmates to [Adirondack C.F.] without the basic health and safety protocols necessary to prevent the spread of COVID-19." R. & R. at 2.

### B. Procedural History

#### *1. Complaint and Motion*

On January 8, 2021, Plaintiffs filed the Complaint on behalf of themselves and a putative class. See Docket; see also Complaint. In it, they raise three causes of action. See id. at 52–57. The first claim, brought pursuant to 42 U.S.C. § 1983, alleges medical indifference in violation of the Eighth Amendment to the United States Constitution. Id. at 52–53. The second claim alleges a violation of Title II of the ADA. Id. at 53–56. Finally, the third claim alleges a violation of Section 504 of the Rehabilitation Act. Id. at 56–57.

On January 11, 2021, Plaintiffs moved for a preliminary injunction. See Docket. They seek an order requiring Defendants to: (1) "[r]egularly screen and test all staff and incarcerated people at Adirondack, including asymptomatic people, in a manner that allows timely isolation of positive cases;" (2) "[i]solate and distance those testing positive and those suspected of having been exposed to the virus from the rest of the Adirondack population, consistent with the [Centers for Disease Control and Prevention] guidelines, by housing incarcerated people

separately from those who have not tested positive, and requiring staff to stay home from work;" and (3) "[c]ease all transfers of people from other prisons to Adirondack until Defendants can demonstrate" that certain safety protocols have been put into place. Mot. at 39.

After this Court determined the Motion presented factual issues, this Court referred the matter to Magistrate Judge Lovric for a hearing. See Dkt. No. 24; see also Martinez-Brooks v. Easter, 459 F. Supp. 3d 411, 449–50 (D. Conn. 2020) ("It is well established that '[t]he existence of factual disputes necessitates an evidentiary hearing . . . before a motion for preliminary injunction may be decided.'") (quoting Kern v. Clark, 331 F.3d 9, 12 (2d Cir. 2003)). The hearing lasted six days in February 2021. See Docket.

*2. Report-Recommendation*

Magistrate Judge Lovric issued the Report-Recommendation recommending denial of Plaintiffs' Motion on March 1, 2021. See id. Plaintiffs objected on March 15, 2021. See id. Defendants filed their Response on March 24, 2021. See id.

## III. LEGAL STANDARD

### A. Review of a Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); see also L.R. 72.1(c). A court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect

of a report-recommendation only for clear error. See Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); see also Demuth v. Cutting, No. 18-CV-789, 2020 WL 950229, at *2 (N.D.N.Y. Feb. 27, 2020) (Kahn, J.). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

### B. Issuance of a Preliminary Injunction

To obtain a preliminary injunction, "a plaintiff must demonstrate (1) irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions on the merits and a balance of hardships tipping decidedly in the plaintiff's favor in order for a preliminary injunction to issue." Fair Hous. in Huntington Comm. v. Town of Huntington, 316 F.3d 357, 365 (2d Cir. 2003) (internal quotation marks omitted).

## IV. DISCUSSION

### A. Standard of Review

In the Objections, as in the Motion, Plaintiffs argue that: (1) they are likely to succeed on the merits of their claims under the Eighth Amendment, the ADA, and the Rehabilitation Act; (2) they have shown a likelihood of irreparable harm; and (3) the balance of equities and public interest favor injunctive relief.

Because the Objections restate arguments presented to the magistrate judge, the Court reviews the Report-Recommendation only for clear error. See Barnes, 2013 WL 1121353, at *1. Applying a stricter standard of review "would reduce the magistrate's work to something akin to a meaningless dress rehearsal." Vega v. Artuz, No. 97-CV-3775, 2002 U.S. Dist. LEXIS 18270, at *3 (S.D.N.Y. Sept. 30, 2002).

**B. Preliminary Injunction**

The Court finds no clear error in the magistrate judge's determination that Plaintiffs are not entitled to injunctive relief.

*1. Likelihood of Success on the Merits*

a. Eighth Amendment

The Report-Recommendation summarized the standard for an Eighth Amendment claim based on prison conditions:

> Prison conditions can constitute "cruel and unusual punishment" if prison officials act (or fail to act) with "deliberate indifference to a substantial risk of serious harm to a prisoner." Farmer v. Brennan, 511 U.S. 825, 836 (1994). A constitutional violation under these principles has both objective and subjective components. First, a prisoner must be incarcerated under conditions that, objectively, pose "a substantial risk of serious harm." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer, 511 U.S. at 834). Second, because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," a prison official must possess "a 'sufficiently culpable state of mind,'" which "[i]n prison-conditions cases . . . is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 297 (1991)).

R. & R. at 14.

The Court finds no clear error in the magistrate judge's determination that Plaintiffs have not shown a likelihood of success on the merits on the subjective component of their Eighth Amendment claim. Because the Court makes this finding, it does not reach the question of whether the Report-Recommendation's objective prong analysis is clearly erroneous.

"Under the subjective prong, a prison official may be held liable for inhumane conditions of confinement 'only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" Martinez-Brooks,

459 F. Supp. 3d at 440 (quoting Farmer, 511 U.S. at 847). This deliberate indifference standard "requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). "The key inquiry is whether [Defendants] 'responded reasonably to th[is] risk.'" Wilson, 2020 U.S. App. LEXIS 18087, at *22 (quoting Farmer, 511 U.S. at 844) (second alteration in original).

The magistrate judge determined that Defendants have acted reasonably, and the Court cannot say that finding constitutes clear error. According to the Report-Recommendation:

> Adirondack's response to COVID-19 has been aggressive and has included, *inter alia*, (1) measures to enforce social distancing in the dining hall such as (a) blue tape on the floor to direct inmates where they may stand, (b) tape on seats that inmates may occupy, and (c) a fifty percent maximum capacity in the dining hall, (2) providing hand sanitizer dispensers throughout the facility, (3) random testing for COVID-19 among inmates (which amounts to testing ten percent of the inmate population per week), (4) additional cleaning supplies provided to each housing unit, (5) a computer tablet program that permits inmates to download movies and music for recreation in their single occupancy cells, (6) doors on most cells, (7) no new inmate transfers to Adirondack since August 2020, (8) the distribution of disposable and cloth masks to each inmate (with the option for additional masks upon request), (9) permitting inmates to eat food—from the commissary or sent to them by friends and family—in their cells, (10) separating phones by at least six feet, (11) requiring staff to wear masks at all times, (12) screening staff when they arrive for duty before permitting them to enter Adirondack—including taking the staff member's temperature and asking COVID-19 screening questions, (13) mandating staff to (a) stay home if they feel sick, and (b) go home if they become sick at work, (14) permitting inmates to shave with electric shavers in their cells, (15) requiring all servers to wear masks in the dining hall, (16) requiring inmates to wear masks at all times when out of their private cells and not eating in the dining hall, (17) beginning to vaccinate eligible incarcerated individuals, and (18) providing at least two isolation rooms in Adirondack's infirmary for quarantining including at least one negative pressure isolation room.

R. & R. at 17–18.[1]

While Defendants' COVID-19 response at Adirondack C.F. has been imperfect, even negligence is not enough to support a finding of deliberate indifference. Hathaway, 37 F.3d at 66. The Court cannot conclude that the magistrate judge committed clear error in finding that Plaintiffs are unlikely to succeed on the merits of their Eighth Amendment claim.

*2. ADA and Rehabilitation Act*

The Court also finds no clear error in the magistrate judge's analysis under the ADA and Rehabilitation Act.

Title II of the ADA "proscribes discrimination against the disabled in access to public services." Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted). Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id. (citing 42 U.S.C. § 12132). As the Report-Recommendation noted, "[a] state prison is a 'public entity' for purposes of the ADA." See R. & R. at 30 n.11 (collecting cases).

Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the

[1] Citing LaMarca v. Turner, 995 F.2d 1526 (11th Cir. 1993), Plaintiffs argue that the fact that there have been no transfers since August 2020 is "not determinative" of their request for prospective injunctive relief. See Objs. at 15 n.7. But LaMarca dealt with remedial actions that occur after a lawsuit has been initiated. See LaMarca, 995 F.2d at 1541 ("When a defendant corrects the alleged infirmity after suit has been filed, a court may nevertheless grant injunctive relief unless the defendant shows that absent an injunction, the institution would not return to its former, unconstitutionally deficient state."). Its application is unclear where, as here, the potentially remedial measure—the cessation of transfers—occurs well before filing.

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The Second Circuit has noted that "the standards under both statutes are generally the same[.]" Wright v. New York State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).

"In order to establish a prima facie violation under these acts, [a plaintiff] must show that 1) he is a qualified individual with a disability; 2) DOCCS is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." Id. (citing Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)). The Report-Recommendation found that Defendants contest only the third element of the test for establishing a prima facie violation of these laws. See R. & R. at 31.

Plaintiffs' theories for their ADA and Rehabilitation Act claims are that Defendants intentionally discriminated against them and failed to provide them with reasonable modifications that would allow them to access programs and services at Adirondack C.F. safely. See Dkt. No. 8-1 at 23.

"Intentional discrimination does not require a showing of animosity or ill will; it may be inferred when a qualifying 'official,' or 'policymaker,' 'acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result.'" Biondo v. Kaledia Health, 935 F.3d 68, 73 (2d Cir. 2019) (quoting Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009)). The deliberate indifference standard is not identical to that applied in the context of the Eighth Amendment. See Alexander v. Nev. Dep't of Corr., No. 15-CV-213, 2016 U.S. Dist. LEXIS 185298, at *7–8 (D. Nev. Sept. 7, 2016).

"The standard for deliberate indifference [under the Rehabilitation Act] is set out in Loeffler," and requires "'an official who at a minimum [1] has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf [2] has actual knowledge of discrimination in the recipient's programs and [3] fails to adequately respond.'" Biondo, 935 F.3d at 73 (quoting Loeffler, 582 F.3d at 276). Plaintiffs agree that this is the correct standard. See Objs. at 25–26.

The Report-Recommendation noted:

> Defendants moved Plaintiffs to a facility that is currently at approximately half of its capacity, where they would be housed in single cells—most with doors on them—and instituted significant measures to safeguard Plaintiffs from COVID-19. It is hard to fathom, under these circumstances, how Defendants could be acting in a fashion that is deliberately indifferent.

R. & R. at 35.

Put differently, the magistrate judge found that Plaintiffs have not shown Defendants "fail[ed] to adequately respond." Loeffler, 582 F.3d at 276. The Court finds no clear error in this holding either.

Plaintiffs also allege that Defendants failed to make reasonable modifications. See Dkt. No. 8-1 at 23. The Report-Recommendation pointed out a number of modifications put into place to prevent the spread of COVID-19 at Adirondack C.F.:

> Here, inmates at Adirondack were provided with the following reasonable modifications to help prevent the unnecessary spread of COVID-19: (1) two bars of soap every two weeks, (2) hand sanitizer dispensers throughout the facility, (3) cloth and disposable masks, (4) random COVID-19 testing of asymptomatic inmates, (5) policies that ensure adequate social distancing in the dining hall, (6) permission to use electric trimmers for shaving in personal rooms, (7) allowing access to shaving razors for approximately thirty-minute increments each day at 6:00 a.m. and 5:40 p.m., (8) cleaning

> supplies to each housing unit every day, and (9) several alternative recreational opportunities for inmates so that inmates may remain socially distanced from one another including use of personal computer tablets, reading material, access to a gym, basketball, ping-pong, and going to the yard.

R. & R. at 31–32.

The Court finds no clear error in the magistrate judge's conclusion that "Plaintiffs have not established that they have been unable to access programs, services, and activities that other inmates routinely access." R. & R. at 33.

**B. Irreparable Harm, Balance of Equities, and Public Interest**

Because the Court concludes that the magistrate judge did not commit clear error in holding that Plaintiffs are unlikely to succeed on the merits of their claims, the Court does not reach the questions of whether they have demonstrated irreparable harm or that the balance of equities and public interest favor an injunction. See, e.g., Two Locks, Inc. v. Kellogg Sales Co., 68 F. Supp. 3d 317, 333 (E.D.N.Y. 2014).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 51) is **APPROVED and ADOPTED** in its entirety; and it is further

**ORDERED**, that Plaintiffs' motion for a preliminary injunction (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: April 20, 2021
Albany, New York

Lawrence E. Kahn
U.S. District Judge